UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DOUGLAS ARTHUR REED | ) | Appeal from the United States |
| A/K/A DOUGLAS AURTHUR REED | ) | Bankruptcy Court for the |
| | ) | Northern District of Indiana, |
| Debtor | ) | Fort Wayne Division |
| _____ | ) | |
| | ) | Bankruptcy Case No. 02-11945 |
| DOUGLAS ARTHUR REED | ) | |
| A/K/A DOUGLAS AURTHUR REED | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-87 |
| | ) | |
| DONALD M. AIKMAN, Trustee | ) | |
| | ) | |
| Appellee | ) | |

**OPINION AND ORDER**

The Debtor has appealed the bankruptcy court's Order granting the Trustee's Motion to Dismiss. For the reasons that follow, the Court affirms the bankruptcy court's order and dismissal.

**BACKGROUND**

The Debtor, Douglas Arthur Reed, filed a bankruptcy petition under Chapter 13 on May 13, 2002, along with a Chapter 13 plan. The bankruptcy court approved the Chapter 13 plan on November 20, 2002.

The Debtor has been largely faithful to the plan. For the 88-week period from June 7, 2002, through February 9, 2004, he had remitted all his required $94 weekly payments, for a total of $8,272. In addition, he remitted $1,798.05, most of his 2002 federal income tax refund. In total, he

had remitted $10,070.05 to the Trustee as of February 13, 2004.

Paragraph 2(J) of the plan requires the Debtor to remit proceeds from his 2002, 2003, and 2004 tax returns. According to the Debtor's 2002 federal income tax return, he was entitled to receive a refund in the amount of $2,556 from the Internal Revenue Service.

Around March 2003, after the Debtor had filed his taxes, he obtained a refund anticipation loan from Imperial Capital Bank. This loan amount included the Debtor's H&R Block's $129 tax preparation fee and loan charges from Imperial Capital Bank totaling $128.95: a $24.95 refund account fee, a systems administration fee of $39, and pre-paid finance charges of $65. The Debtor granted Imperial Capital Bank a security interest in his 2002 federal income tax return as collateral on his loan. On March 4, 2003, Imperial Capital Bank wrote a check to the Debtor for the net proceeds of his loan, $2,298.05.

A dispute arose between the Parties over what the plan required the Debtor to remit from his 2002 federal income tax refund. The Debtor, on the basis of his interpretation of paragraph 2(J), believed that he was required to remit the "net" refund he received from Imperial Capital Bank, minus a $500 allowance for emergency and non-budgeted expenses. The Debtor sent the Trustee a check for this amount, $1,798.05, on September 29, 2003.

The Trustee disagreed: under his reading, the plan required the Debtor to remit an amount based on the refund he received from the Internal Revenue Service, not the loan proceeds he received from Imperial Capital Bank. Allowing the Debtor to deduct H&R Block's $129 tax preparation fee and the aforementioned $500, the Trustee believed the Debtor should have remitted $1,927 from his 2002 federal tax return. The difference between what the Debtor remitted to the Trustee and what the Trustee believed he was owed is $128.95.

When the Debtor refused to remit the additional $128.95, the Trustee moved to dismiss on January 22, 2004. The bankruptcy court held a hearing on the Trustee's motion on February 23, 2004. The court issued an order on February 24, 2004, dismissing the case for reasons stated in the February 23, 2004, hearing. The Debtor filed appealed to this Court on March 15, 2004.

## STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Heartland Steel, Inc.*, 389 F.3d 741, 744 (7th Cir. 2004). However, pursuant to Federal Rule of Bankruptcy Procedure 8013, a bankruptcy court's findings of fact should not be disturbed unless they are found to be "clearly erroneous," with "due regard [to] be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

Other matters over which the bankruptcy court had discretion are also reviewed for an abuse of discretion. *In re Boodrow*, 126 F.3d 43, 47 (2nd Cir. 1997); *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 364 (E.D. N.Y. 2001).

> Thus, a bankruptcy court's decision on whether to grant relief under section 105(a) is reviewed for an abuse of discretion, *as is the decision on whether to dismiss a Chapter 13 petition pursuant to section 1307(c)*. A bankruptcy court will have abused its discretion if it "ignore[d] a material factor deserving of significant weight, relie[d] upon an improper factor or [made] a serious mistake in weighing proper factors."

*Dep't of Treasury of Com. of Puerto Rico v. Galarza Pagan*, 279 B.R. 43, 46 (D. P.R. 2002) (citations omitted) (emphasis added). The same standard applies when bankruptcy judge interprets a plan he has confirmed; this interpretation is entitled to greater weight than an ordinary contract because the judge helped form it. *Foufas v. Dru*, 319 F.3d 284, 286 (7th Cir. 2003); *In the Matter of Weber*, 25 F.3d 413, 416 (7th Cir.1994).

In this case, the Debtor argues that the bankruptcy court made a mistake of law when it concluded that it could dismiss his case under § 1307(c) without finding that his default was material. He contends that because this was a mistake of law, as the bankruptcy court improperly interpreted and applied a bankruptcy statute, this Court should review the bankruptcy court's dismissal *de novo*.

The Trustee, however, argues that a bankruptcy court's decision to dismiss a case under § 1307(c) is reviewed only for abuse of discretion.

The Court finds that the abuse of discretion standard applies to this appeal. The bankruptcy court's interpretation of § 1307 is uncontroversial and this is not the true subject matter of the Debtor's appeal. Rather, the Debtor has appealed the bankruptcy court's interpretation of his plan and its judgment that sufficient cause existed to dismiss the case under § 1307. These are matters to which an appellate court, such as this Court, owes the bankruptcy court considerable deference and may overturn only when presented with evidence of an abuse of discretion.

## ANALYSIS

The Debtor has brought this matter before this Court because he refused to remit to the Trustee $128.95 from his 2002 federal tax refund, even though the bankruptcy court ruled it was his obligation to do so. The Debtor made it unmistakably clear to the bankruptcy court that he did not intend to remit these funds to the Trustee, and the court found that this was sufficient cause to grant the Trustee's motion to dismiss.

A.     **Interpretation of Paragraph 2(J)**

The Debtor presents two arguments on appeal. First, the Debtor argues that the Trustee and now the bankruptcy court were incorrect to find that he owed the Trustee the contested $128.95 from his 2002 federal income tax return.

Several of the Debtor's arguments are answered by the simple observation that the bankruptcy court merely interpreted the plan against him. This is answer enough to the Debtor's argument that the bankruptcy court illegally ignored the plain language of the plan. The same holds for the Debtor's argument that the bankruptcy court erred by allowing the Trustee to collaterally attack a confirmed plan in his motion to dismiss. The transcript from the bankruptcy court's hearing on the Trustee's Motion to Dismiss makes this clear.

> THE COURT: The first [issue] is, what does the plan require where income tax returns and refunds are concerned? How do we read "net"? . . . (Transcript at 13)
>
> [T]his read of the plan, [the Trustee's] read of the plan, which I find to be the correct one, comports not only with the . . . language of the plan and I think the most natural reading of that language—the Debtor's reading is . . . very strained and surprising—but it also comports with the provisions of the Bankruptcy Code. . . . (Transcript at 16–17.)

There is no evidence that the bankruptcy court abused its authority by ignoring the plain language of the plan, by redacting part of the plan, or allowing the Trustee to collaterally attack the plan. The court did not ignore the word "net" in paragraph 2(J), but merely found the Trustee's interpretation to be more reasonable and plausible than the Debtor's.

The Debtor's contentions—that the court ignored the plan or misused its authority—are not persuasive. The bankruptcy court did no more than resolve the disputed language in the plan against the Debtor. This is a matter soundly within the bankruptcy court's discretion, and this Court could only reverse if presented evidence that this discretion was abused. The Debtor has presented no such

evidence. Accordingly, the Court upholds the bankruptcy court's interpretation of the plan and its determination that the Debtor has remitted $128.95 less than the plan requires from his 2002 federal income tax return.

**B.     Cause to Dismiss**

The Debtor's second argument on appeal is that, having determined that the plan required the Debtor to remit the $128.95 in dispute, the bankruptcy court erred when it found cause to grant the Trustee's Motion to Dismiss. The Debtor argues that the bankruptcy court could not have dismissed his case if it had applied the proper standard on the Trustee's Motion.

As he did below, the Debtor here relies on a loophole he believes he has found in the laws governing his bankruptcy: he has openly defied a federal court by refusing to remit $128.95 to the Trustee, yet he believes that the Court cannot punish him for doing so, since this is a relatively small amount.

> THE COURT: Rather, I hear you saying . . . [w]e're not going to pay him regardless of how you interpret the plan, Judge, and we don't think a hundred and twenty-eight bucks is a material default, so you, you know, you can't dismiss the case anyway. Is that the position you're taking here? Is that what you're telling me?
>
> MR. ROYER [attorney for the Debtor]: Yes it is.

(Transcript at 9.) This amount is significant enough to the Debtor that he has refused to obey the court and remit it to the Trustee. However, he believes that a court could not find it to be a "material" amount, and therefore could not dismiss his case under 11 U.S.C. § 1307(c)(6), which he argues is the only provision under which the court could have dismissed his case. On this basis, the Debtor claims the bankruptcy court made a mistake of law and this Court ought to review this issue *de novo*.

The Trustee argues that the bankruptcy court is not powerless to respond to the Debtor's defiance and could find cause to grant his Motion to Dismiss, even without finding $128.95 to be a material default, since 11 U.S.C. § 1307 provides an illustrative, not an exclusive, list of causes to dismiss.

The Debtor's interpretation of § 1307 ignores the reasoning provided by the bankruptcy court, general rules of statutory construction, the explicit rules of statutory construction given in the bankruptcy code, and caselaw.

> Section 1307 reads:
>
> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause, including* . . . (6) material default by the debtor with respect to a term of a confirmed plan.

11 U.S.C. § 1307 (emphasis added). The bankruptcy court interpreted this statute as follows:

> Now, what to do about that default? Is there cause to dismiss this case? Under the language of the statute, [a] court can dismiss a case for cause "including," and then it lists a number of examples. Those examples are not an exclusive list.

(Transcript at 17.)

The Debtor's Brief trumpets the primary rules of statutory construction, including the principle that "words are to be given their plain and common meaning." (Brief at 14.) Yet he would have this Court ignore the word "including" in § 1307 altogether. As if the text of § 1307 was not clear enough, the bankruptcy code's rules of construction state, "In this title . . . 'includes' and 'including' are not limiting." 11 U.S.C. § 102(3). *See also* 5 *Collier on Bankruptcy,* ¶¶ 1307.01[4], 1300.07[1][c], 1307.04 (L. King 15th ed.).

Not surprisingly, caselaw also supports this reading. "These listed 'causes' are not

7

exhaustive, nor is the Court limited to this list." *In re Famisaran*, 224 B.R. 886, 893 (Bankr. N.D. Ill. 1998) (citing *Ekeke v. United States*, 133 B.R. 450, 452 (S.D. Ill. 1991). "The specific grounds for dismissal set out in § 1307(c) are not all-inclusive or exhaustive." *In re Earl*, 140 B.R. 728, 733 (Bankr. N.D. Ind. 1992).

The Debtor's construction of 11 U.S.C. § 1307 is unsupportable. The bankruptcy court did not have to determine whether the Debtor's case met the criteria for dismissal under § 1307(c)(6), but only whether there was cause to dismiss. Accordingly, this Court reviews the bankruptcy court's dismissal for an abuse of discretion.

To determine whether the bankruptcy court abused its discretion, the Court must first revisit the February 23, 2004, hearing to discern why the bankruptcy court found cause to grant the Trustee's Motion. Its decision to dismiss the Debtor's bankruptcy case rested heavily upon its conclusion, confirmed by the Debtor more than once during the hearing, that the Debtor's case would ultimately be dismissed. It was not a matter of if, but only when, this would take place.

> THE COURT: I've merely heard you say he's not entitled to it, we're not going to pay it, regardless of how you read the plan, Judge. And in that event, *the Debtor is never going to get a discharge* in this case because they don't get a discharge until they fulfill their obligations under the plan.
>
> MR. ROYER: *That's the Debtor's position.*
>
> THE COURT: In which event, *the case will ultimately get dismissed. The Debtor's not going to get a discharge* if they don't pay the hundred and twenty-eight bucks and the plan requires it, correct?
>
> MR. ROYER: *Correct.*
>
> THE COURT: At some point in time the plan is going to come to an end. It's not forever. Right?
>
> MR. ROYER: Right.

> THE COURT: And when that happens and if the plan has not been fulfilled, if the plan has not been performed, *we have to dismiss the case; right?*
>
> MR. ROYER: *Correct.*
>
> THE COURT: So, from what I'm hearing you say, this case is steaming towards a dismissal because of a hundred and twenty-eight bucks. It is merely whether I dismiss it today as a material default on the Trustee's motion or if I dismiss it several years from now as a consequence of the Debtor's continuing refusal to pay it when the time has run for them to perform their plan.
>
> MR. ROYER: You have made that clear.
>
> THE COURT: So, I mean, that's what I understand the consequences of the Debtor's position to be.
>
> MR. ROYER: That is the Debtor's position.
>
> THE COURT: If the case is steaming towards a dismissal, why wait?

(Transcript at 10–11.)

The bankruptcy court did not so much determine that a dismissal was proper as confirm with the Debtor that a dismissal was inevitable, since the Debtor stated he would never remit the outstanding amount due from 2002 federal income tax return. The Debtor agreed with the court that his case would eventually be dismissed. The court made it clear to the Debtor that it was his own tactics that put the case into a position where dismissal was inevitable.

Setting aside the fact that the Debtor agreed with the bankruptcy court that his case would be dismissed, the transcript demonstrates that the bankruptcy court judge found independent cause for granting the Trustee's Motion to Dismiss.

> Now, what to do about the default. *Is there cause to dismiss the case?* Under the language of the statute, Court can dismiss a case for case including . . . and then it lists a number of examples. Those examples are not an exclusive list. *Cause goes beyond them.*
>
> I recognize that one of those causes . . . is a material default under the plan. And if that were the exclusive thing the Court had to focus on, I would probably be

9

> forced to say this is not a material default. In the total scheme of things, a hundred and twenty-eight bucks, as we sit here today, given the amount of money that the Debtor has already paid into the plan, is probably not material and reasonable people should be able to figure out some way between now and the natural end of the plan that we could get another hundred and twenty-eight dollars into the Trustee's pocket. That would be the most natural outcome for this piece of litigation.
> 
> *However, somebody here has an agenda*, because what I hear from the Debtor is . . . "*Come hell or high water there is no way we are ever going to pay this one hundred and twenty-eight dollars to the Trustee regardless of your interpretation of the plan today, Judge. Because we don't read it that way. We're—we don't want to do it. We're not going to do it. And that's okay.*"
> 
> However, the consequences of that is that this case, when it comes to the end of its stated term, is going to fail. Because—and nobody's saying—nobody's saying that, Judge, even without this hundred and twenty-eight dollars are creditors are going to be paid in full, anyway. . . . So, this hundred and twenty-eight dollars is necessary. . . .
> 
> So, it is not a question . . . of whether this case is going to get dismissed, but simply a matter of when. Will we do it now or will we do it a few years from now? Because *the Debtor's position is adamantly clear that that is exactly what the outcome of this case is going to be. Dismissal. Because they—there is no way, never, no how, that they are going to pay this hundred and twenty-eight bucks. . . .*
> 
> (Transcript at 17–19.)
> 
> So, yes, this default may not be material, but, in the overall context of this case, its past, its present, and its future, and the litigation positions of the Parties, I think that cause exists to grant the motion.
> So, for all of these reasons, Mr. Aikman [the Trustee], your motion is granted. Case dismissed. (Transcript at 22.)

Given that the amount in controversy was so minor, and the Debtor's arguments were so weak, the bankruptcy court remarked that it is hard to believe that anyone would have contested the issue unless, like the Debtor, he was not paying for his attorney's time:

> As I say, it's a good thing that Legal Services is representing the Debtor and there's no economic incentive—maybe that's a bad thing. There's no economic incentive rooting around here to influence people's litigation positions, because this is not a reasonable dispute. This is not a reasonable position to take in this case. But it's a position the Debtor's want to take.

(Transcript at 20.)

The court explained in detail why it found cause to dismiss the Debtor's case. The

10

bankruptcy court did not abuse its discretion in so finding, and therefore this Court upholds its determination.

The Debtor argues separately that the bankruptcy court erred because it dismissed his case without determining that dismissal was "in the best interests of creditors and the estate," as § 1307 requires. The Debtor complains that there was "no meaningful analysis by the [bankruptcy court] as to why dismissal is in the best interests of creditors and the estate." (Brief at 20.)

Despite the Debtor's protestations, the Court finds that the bankruptcy court not only addressed this issue but gave the Debtor numerous opportunities to explain why the court was wrong and why dismissal would be disadvantageous for the creditors and the estate:

> MR. ROYER: But is it in the best interests of the creditors and the Bankruptcy Estate for this case to be dismissed for a hundred and twenty-eight dollars?
>
> THE COURT: Well, *it is in the best interests of the Debtor for the case to be dismissed for a hundred and twenty-eight dollars? The Debtor is the one that is resisting the issue.*
>
> MR. ROYER: Well, yes, and the Debtor does resist the issue and the Debtor will continue to resist the issue. . . . (Transcript at 7 (emphasis added).)
>
> THE COURT: So . . . in light of the reality that this case is headed for a dismissal, it is merely a question of when, we might as well recognize things now, rather than later. There's no reason that I can see that we should perpetuate a case under the Bankruptcy Code where the Debtor isn't going to fulfill its obligations. It's not going to get a discharge. *There's no reason that creditors should be continually restrained by the automatic stay when we know that the case is going to fail, that the case will be dismissed, the stay will turn terminate as a matter of law, and it will not be replaced by the discharge injunction.* (Transcript at 20 (emphasis added).)
>
> THE COURT: When the outcome is known—and *I very pointedly asked you several times, Mr. Royer, and you refused to answer my question.* I asked you to give me a reason that if Mr. Aikman's interpretation is correct so that a hundred and twenty-eight dollars is going to get paid before—or the case is going to fail, *why shouldn't we do it sooner rather than later and you refused to answer my question. I gave you every opportunity to give me a reason to perpetuate this case in light of the possibility that Mr. Aikman's interpretation of the plan might be correct one and*

*either you wouldn't or you couldn't.* (Transcript at 20-21 (emphasis added).)

The bankruptcy court concluded that, since the Debtor conceded that the case would ultimately fail and be dismissed, perpetuating the automatic stay was pointless and disadvantageous to the creditors. The Court finds that the bankruptcy court adequately considered and found that dismissal was in the best interests of the creditors and the estate. It did not abuse its discretion in reaching this conclusion and therefore this Court affirms its conclusion.

Lastly, the Court notes the Debtor's accusation that the bankruptcy court used the threat of dismissal "to coerce [the Debtor's] counsel to withdraw provisions of confirmed plans that are properly enforceable but that the Court finds personally distasteful." (Brief at 20.) This is a strong charge to bring against the bankruptcy court. And it is false. As the Court has stated earlier, the bankruptcy court did not redact or otherwise modify any portion of the Debtor's plan. Rather, interpreted the plan against the Debtor. This was far from the lawless act of coercion the Debtor claims.

## CONCLUSION

In sum, this Court must affirm the bankruptcy court's dismissal unless it finds that the court abused its discretion. The bankruptcy court did not abuse its discretion: it interpreted the plain language of the plan against the Debtor and then found there was cause to dismiss when the Debtor made it clear that he would not comply with the Court's order and that the Debtor would never complete the confirmed plan. For these reasons, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED on June 3, 2005.

            S/ Theresa L. Springmann
            THERESA L. SPRINGMANN
            UNITED STATES DISTRICT COURT